**Susan M. BURGESS, Plaintiff,**

v.

**Thomas H. CAHALL, Jr. and The Chesapeake Employment Corporation, Defendants.**

**No. Civ.A. 99–217–JJF.**

United States District Court, D. Delaware.

Feb. 29, 2000.

---

John X. Denney, Jr., Tomar, Simonoff, Adourian, O'Brien, Kaplan, Jacoby & Graziano, Wilmington, DE, of counsel Stephen B. Lebau, Lebau & Neuworth, LLC, Baltimore, MD, for Plaintiff.

Roy S. Shiels, Brown, Shiels, Beauregard & Chasanov, Dover, DE, for Defendants.

Carl Schnee, United States Attorney, David W. Ogden, Assistant United States Attorney, Virginia Gibson–Mason, Assistant United States Attorney, John R. Tyler, Melissa Hart, Office of the United States Attorney, Wilmington, DE, for the United States.

## MEMORANDUM OPINION

FARNAN, Chief Judge.

Presently before the Court is a Motion To Dismiss Pursuant To F.R.C.P. 12(b)(6) (D.I.6) filed by Defendants, Thomas H. Cahall, Jr., and The Chesapeake Employment Corporation. By her Complaint, Plaintiff Susan M. Burgess raises one federal cause of action against Defendants, specifically a claim under the Violence Against Women Act, 42 U.S.C. § 13981, et seq. The remaining causes of action raised by Plaintiff are claims under state law, including claims for battery, false imprisonment, intentional infliction of emotional distress, breach of the covenant of good faith and fair dealing, and fraud, deceit and misrepresentation. Defendants' Motion To Dismiss is based solely on the ground that the Violence Against Women Act is unconstitutional. For the reasons set forth below, the Court will deny Defendants' Motion To Dismiss Pursuant To F.R.C.P. 12(b)(6).

## BACKGROUND

Plaintiff filed the instant action against Defendants alleging numerous state law claims and one federal claim under Section 13981(c) as a result of alleged incidents occurring during Plaintiff's employment with Defendant, The Chesapeake Employment Corporation ("Chesapeake"). From April 11, 1999 to April 21, 1999, Plaintiff was employed by Chesapeake. (Cmplt. at 4–27). At the time of her employment, Defendant Thomas H. Cahall headed the company. Defendant Cahall recruited, in-

terviewed and hired Plaintiff. Defendant Cahall was Plaintiff's administrative superior and supervisor during her employment. (Cmplt. 4–12).

In her Complaint, Plaintiff alleges that Defendant Cahall committed numerous sexual assaults on Plaintiff, unlawfully imprisoned her and exposed her to the risk of serious physical injury. (Cmplt. at 9–17, 25). Plaintiff contends that Defendant Cahall's crimes were motivated, at least in part, by an animus based on Plaintiff's gender. (Cmplt. at 26). Plaintiff also contends that other females have complained of sexual assaults and harassment by Defendant Cahall, thus supporting Plaintiff's allegation that Defendant Cahall's actions were gender-based. (Cmplt. at 20–22).

Shortly after the start of a criminal trial related to Plaintiff's allegations, Defendant Cahall pled guilty to charges of sexual harassment, offensive touching and third-degree unlawful sexual contact in the Court of Common Pleas of Kent County, Delaware. The court sentenced Defendant Cahall to serve a 30–day suspended sentence and pay fines and court costs totaling $754.50. (D.I. 12 at Ex. 1).

In lieu of filing an Answer to Plaintiff's Complaint, Defendants filed the instant Motion pursuant to Federal Rule of Civil Procedure 12(b)(6). Although Defendants state in their Motion that they contest the majority of the allegations raised by Plaintiff's Complaint, they concede for purposes of their Motion that the Court must accept as true the facts by Plaintiff in her Complaint.

By their Motion To Dismiss, Defendants challenge the constitutionality of the VAWA. Specifically, Defendants contend that the creation of a private cause of action by the VAWA is not a valid exercise of Congress' power under either the Commerce Clause or the Fourteenth Amendment. In order to defend the constitutionality of the VAWA, the United States moved to intervene pursuant to 28 U.S.C. § 2803. (D.I.13). The Court granted the United States' motion to intervene, and the United States filed a Memorandum Of Law In Support Of The Constitutionality Of The Civil Rights Provision Of The Violence Against Women Act Of 1994 And In Response To Defendants' Motion To Dismiss (D.I.15). Since the completion of briefing on Defendants' Motion, the United States, Plaintiff and Defendants have filed notices of recent authority in support of their respective positions. (D.I.32, 34).

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.1993). When considering a motion to dismiss, a court must accept as true all allegations in the complaint and must draw all reasonable factual inferences in the light most favorable to the plaintiff. *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255 (3d Cir. 1994). The Court is "not required to accept legal conclusions either alleged or inferred from the pleaded facts." *Kost*, 1 F.3d at 183. Dismissal is only appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## DISCUSSION

The Violence Against Women Act ("VAWA") recognizes that "all persons within the United States shall have the right to be free from crimes of violence motivated by gender." 42 U.S.C. § 13981(b). To help protect and preserve this right, Section 13981(c) of the VAWA creates a private right of action in federal court for victims of gender violence. In pertinent part Section 13981(c) provides:

A person (including a person who acts under color of any statute, ordinance, regulation, custom, or usage of any State) who commits a crime of violence motivated by gender and thus deprives another of the right declared in subsection (b) of this section shall be liable to the party injured, in an action for the recovery of compensatory and punitive damages, injunctive and declaratory relief, and such other relief as a court may deem appropriate.

42 U.S.C. § 13981(c). In enacting the VAWA, Congress expressly relied upon its power under section 5 of the Fourteenth Amendment and section 8 of Article 1 of the Constitution, the Commerce Clause. 42 U.S.C. § 13981(a).

The overwhelming majority of courts who have addressed the constitutionality of the VAWA have concluded that the VAWA is a valid and constitutional exercise of Congress' power. *See United States v. Page*, 167 F.3d 325 (6th Cir.1999) (en banc); *United States v. Wright*, 128 F.3d 1274 (8th Cir.1997); *Williams v. Board of County Commissioners*, 1999 WL 690101 (D.Kan. Aug.24, 1999); *Kuhn v. Kuhn*, 1999 WL 519326 (N.D.Ill. July 15, 1999); *Ericson v. Syracuse Univ.*, 45 F.Supp.2d 344 (S.D.N.Y.1999); *Doe v. Mercer*, 37 F.Supp.2d 64, 66 (D.Mass.1999); *Liu v. Striuli*, 36 F.Supp.2d 452 (D.R.I.1999); *Mattison v. Click Corp. of America, Inc.*, 1998 WL 32597, *6 (E.D.Pa. Jan.27, 1998); *Ziegler v. Ziegler*, 28 F.Supp.2d 601, 607–617 (E.D.Wash.1998); *Doe v. Hartz*, 970 F.Supp. 1375, 1423 (N.D.Iowa 1997), rev'd on other grounds, 134 F.3d 1339 (8th Cir. 1998); *Anisimov v. Lake*, 982 F.Supp. 531, 540 (N.D.Ill.1997); *Seaton v. Seaton*, 971 F.Supp. 1188, 1193 (E.D.Tenn.1997); *Crisonino v. New York City Housing Auth.*, 985 F.Supp. 385, 396–97 (S.D.N.Y.1997); *Doe v. Doe*, 929 F.Supp. 608, 617 (D.Conn. 1996). *But see Brzonkala v. Virginia Polytechnic Institute*, 169 F.3d 820 (4th Cir. 1999); *Bergeron v. Bergeron*, 48 F.Supp.2d 628 (M.D.La.1999). This Court is persuaded by the rationale espoused by the majority of courts addressing the VAWA. Accordingly, the Court joins the majority in upholding the constitutionality of the VAWA.

■ The United States Supreme Court has recognized the task of adjudicating the constitutionality of an Act of Congress as "the gravest and most delicate duty that this Court is called upon to perform." *Blodgett v. Holden*, 275 U.S. 142, 148, 48 S.Ct. 105, 72 L.Ed. 206 (1927) (Holmes, J.). With due regard for Congress' status as a coequal branch of government whose members are democratically elected by the citizens of the United States, the Supreme Court requires federal courts to afford "great weight to the decisions of Congress." *Columbia Broadcasting System, Inc. v. Democratic National Committee*, 412 U.S. 94, 102, 93 S.Ct. 2080, 36 L.Ed.2d 772 (1973). This deferential approach to statutory review is particularly appropriate in cases challenging Congressional authority under the Commerce Clause. *Williams v. Board of County Commissioners*, 1999 WL 690101 at *1. In such cases, the court's review is limited to (1) a determination of whether a rational basis exists for concluding that the regulated activity sufficiently affects interstate commerce; and (2) if a rational basis exists, whether the means chosen by Congress are "reasonably adapted to the end permitted by the Constitution." *Hodel v. Virginia Surface Min. and Reclamation Ass'n. Inc.*, 452 U.S. 264, 276 (1981).

■ After reviewing the extent of the Congressional findings concerning the impact of gender-motivated violence on the national economy and interstate commerce, the Court concludes that there is a rational basis for Congress' conclusion that gender-motivated violence substantially affects interstate commerce. Congress embarked on a four-year course of study and hearings concerning domestic and other gender-motivated violence before enacting the VAWA, and the Congressional record is replete with findings illustrating the impact of domestic and gender-based violence on interstate commerce. Recognizing the vast numbers of violent crimes

against women, Congress found that violence is the leading cause of injury to women ages 15–44. S.Rep. No. 103–138, 103d Cong., 1st Sess. at 38. Congress further found that the problem of violence against women permeates not just the homefront, but also the workplace. To this effect, Congress found that the leading cause of death for women on the job is due to homicide, and nearly 50 percent of rape victims lose their jobs or are forced to resign their jobs. S.Rep. No. 103–138 at 54 & n. 70. Examining just the economic consequences of domestic violence alone, Congress found that domestic violence costs employers an estimated $3 to $5 billion annually due to absenteeism from the workplace, and we, as a nation, spend $5 to $10 billion a year on health care, criminal justice and other social costs related to domestic violence. S.Hrg. No. 101–939, pt. 1, *Women and Violence: Hearings Before the Senate Comm. on the Judiciary*, Serial No. J–101–80, 101st Cong., 2d Sess., pt. 1 (June 20, 1999) ("Senate Women and Violence Hrg.") at 58; S.Rep. No. 103–138 at 41 (footnote omitted). In addition to the economic impact of domestic violence, Congress also found that the justifiable fear of gender-motivated violence deters women from using public transportation and deters the free movement of women interstate. Senate Women and Violence Hrg. at 69 (according to Helen Neuborne, fear of gender-motivated violence "acts as a barrier to mobility, particularly for those women who have no alternative to public transportation because of economic constraints"); *see also* S.Hrg. No. 102–369, *Violence Against Women: Victims of the System: Hearing on S.15 Before the Senate Comm. on the Judiciary*, Serial No. J–102–10, 102d Cong., 1st Sess. (Apr. 9, 1991) ("Senate Violence Against Women Hrg.") at 2 (statement of Senator Biden, citing survey which found that approximately one-half of the women responding said that they never use public transportation after dark); *Crimes of Violence Motivated by Gender: Hearing before the Subcomm. on Civil and Constitutional Rights of the House Comm.*

*on the Judiciary,* Serial No. 51, 103d Cong., 1st Sess. (Nov. 16, 1993) ("House Crimes of Violence Motivated by Gender Hrg.") at 5 (recognizing that "fear of gender-based violence deters women's free movement interstate, and limits every economic choice, including education, employment and travel").

Based on these and other similar findings, Congress concluded that gender-motivated violence has "a substantial adverse effect on interstate commerce, by deterring potential victims from traveling interstate, from engaging in employment in interstate business, and from transacting with business, and in places involved, in interstate commerce." H.R.Conf.Rep. No. 103–711, 103d Cong., 2d Sess. 385 (1994); *see also* S.Rep. No. 103–138 at 54 ("Gender-based crimes and the fear of gender-based crimes restricts movement, reduces employment opportunities, increases health expenditures, and reduces consumer expending, all of which affect interstate commerce and the national economy.") Given the nature of Congress' findings and the abundance of evidence supporting them, the Court cannot conclude that Congress lacked a rational basis to conclude that gender-motivated violence substantially affects interstate commerce.

In challenging the VAWA, Defendants rely primarily on the Fourth Circuit's decision in *Brzonkala v. Virginia Polytechnic Institute and State University,* 169 F.3d 820 (4th Cir.1999), *cert. granted sub nom., United States v. Morrison,* —— U.S. ——, 120 S.Ct. 11, 144 L.Ed.2d 842 (1999). In holding the VAWA unconstitutional, the *Brzonkala* court construed and applied the Supreme Court's decision in *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), a case in which the Supreme Court concluded that the Commerce Clause did not support the enactment of the Gun–Free School Zones Act of 1990. Construing *Lopez* narrowly to require the subject matter of a statute to be economic activity in order to have the necessary nexus to the Commerce Clause, the

*Brzonkala* court found the VAWA unconstitutional because it "neither regulates an economic activity, nor contains a jurisdictional element." 169 F.3d at 833.

Although the Court of Appeals for the Third Circuit has not yet had the opportunity to pass on the constitutionality of the VAWA, the court has had occasion to comment on and apply *Lopez* in a variety of circumstances. For its part, the Third Circuit has declined to view the *Lopez* decision as a "sharp break" from the Supreme Court's prior Commerce Clause precedents. *United States v. Bishop*, 66 F.3d 569, 590 (3d Cir.1995) ("Thus, despite protestations to the contrary, the winds have not shifted that much."). To this effect, the Third Circuit has emphasized the view espoused by Justices Kennedy and O'Connor, who "counseled 'great restraint' before a court finds Congress to have overstepped its commerce power, and believed the Court's opinion [in *Lopez* ] to have been a 'necessary though limited holding'." *Id.* Accordingly, the Third Circuit has construed *Lopez* to require a deferential approach to Congress' legislative judgment. *Bishop*, 66 F.3d at 577 (holding that "[o]ur job ... is not to second guess the legislative judgment of Congress ... but rather to make sure that Congress had a rational basis" for enacting law, and stating that "[w]e ... do not believe that Lopez calls for federal courts to supplant Congressional judgments with their own").

Further, the Third Circuit has rejected the position taken by the *Brzonkala* court that the subject matter of a statute must be economic activity in order to pass muster under the Commerce Clause. For example, in *United States v. Parker*, the Third Circuit expressly rejected "the notion that the Supreme Court in Lopez created a bright line rule establishing that unless an activity is commercial or economic it is beyond the reach of Congress under the Commerce Clause." 108 F.3d 28, 30 (3d Cir.), *cert. denied*, 522 U.S. 837, 118 S.Ct. 111, 139 L.Ed.2d 64 (1997) (explaining *United States v. Bishop*, 66 F.3d 569, 580–581 (3d Cir.), *cert. denied*, 516 U.S. 1032, 116 S.Ct. 681, 133 L.Ed.2d 529

(1995) and upholding constitutionality of Child Support Recovery Act). And recently, the Third Circuit reaffirmed this position in *United States v. Rodia*, 194 F.3d 465 (3d Cir.1999).

In *Rodia*, the Third Circuit upheld the constitutionality of 18 U.S.C. § 2252(a)(4)(B), a statute which imposes criminal liability on individuals who possess child pornography that has not traveled in interstate commerce, as long as one of the materials from which the pornography was created has traveled through interstate commerce. Recognizing that the activity in question was not directly linked to interstate commerce, the Court held that "many cases from this and other courts of appeals have made clear that the specific activity that Congress is regulating need not itself be objectively commercial, as long as it has a substantial effect on commerce." *Id.* at 481 (collecting cases). Thus, it appears to the Court that the Third Circuit has taken a broader view of the *Lopez* decision than the *Brzonkala* court.

In addition, the Third Circuit has also rejected the *Brzonkala* court's view that a statute enacted under the Commerce Clause must contain a jurisdictional requirement to be constitutional. For example, in *United States v. Rybar* the Third Circuit expressly recognized that the *Lopez* court "did not state, as it easily could have, that such a statutory feature was essential." 103 F.3d 273, 285 (3d Cir. 1996). While the court recognized that the presence of a jurisdictional element may be a condition sufficient to establish a statute's validity under the Commerce Clause, the court found no basis in Supreme Court precedent to conclude that the inclusion of a jurisdictional element is a necessary condition for validity. *Id.* (upholding constitutionality of federal statute banning transfer or possession of machine guns under Commerce Clause despite absence of jurisdictional element). Reaffirming this view recently in *Rodia*, the court found the limiting jurisdictional factor "almost use-

less, since all but the most self-sufficient child pornographers will rely on film, cameras or chemicals that traveled interstate," yet the court found the statute constitutional because of its nexus between interstate commerce and the activity regulated. 194 F.3d at 473. Because the Third Circuit has rejected the *Brzonkala* court's narrow approach to the *Lopez* decision, the Court cannot ascribe to the *Brzonkala* court's rationale.

 Having concluded that a rational basis exists for Congress' conclusion that domestic and gender-based violence substantially affects interstate commerce, the Court must next consider whether Congress chose a regulatory means reasonably adapted to the ends permitted by the Constitution. In enacting the VAWA, Congress examined a voluminous record, including reports of state law enforcement agencies and state judicial systems regarding gender-based violence. Reviewing this and other evidence on the topic, Congress found that "[s]tudy after study has concluded that crimes disproportionately affecting women are often treated less seriously than comparable crimes affecting men." S.Rep. No. 138 at 49 (1990). As a result, Congress concluded that existing state and federal criminal laws were inadequate to protect against gender-motivated violence.

As other courts addressing the VAWA have acknowledged, the goal of deterring gender-motivated violence and providing redress for victims of such violence is certainly a worthy cause that is consistent with the constitutionally permissible ends of safeguarding civil rights. *See Kuhn,* 1999 WL 519326 at *10 (citing *Anisimov,* 982 F.Supp. at 540 and *Seaton,* 971 F.Supp. at 1190). The means selecting by Congress to accomplish this goal is the grant of a private cause of action to provide ordinary citizens with the power to protect their civil rights. While this may

not be the best method or the only method to protect victims of gender-based violence, the Court cannot conclude that the method is unreasonable. *Id.* As the court in *Liu* recognized:

Faced with the problem of inadequate enforcement mechanisms of anti-bias laws, Congress turned to a tried-and-true solution: the private Attorney General. This method of enforcing civil rights, granting private litigants the statutory power to protect their own civil rights through the courts, has been adopted by Congress in other statutory schemes and has continually received the approval of federal courts ... Based on this history, this Court can only conclude that this method of enforcement of VAWA is reasonable.

36 F.Supp.2d at 478 (citations omitted).

 In sum, the Court concludes that a rational basis exists for Congress' conclusion that domestic and gender-based violence substantially affects interstate commerce and that the means employed by the VAWA are "reasonably adapted" to constitutionally permissible ends. Therefore, the Court joins the majority of courts in concluding that the VAWA is a valid exercise of Congress' powers under the Commerce Clause.[1] Accordingly, the Court will deny Defendants' Motion To Dismiss.

### CONCLUSION

For the reasons discussed, Defendants' Motion To Dismiss Pursuant To F.R.C.P. 12(b)(6) will be denied.

---

1. Because the Court concludes that the VAWA is constitutional under the Commerce Clause, the Court declines to address whether the VAWA is also constitutional under section 5 of the Fourteenth Amendment. *See e.g. Ericson,* 45 F.Supp.2d at 348, n. 2; *Seaton,* 971 F.Supp. at 1190 n. 1.